UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF COLUMBIA

**FILED**

JUL 2 2 2008

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | Criminal No.: 08-cr-00181-JDB |
| | ) | |
| | ) | Filed: |
| v. | ) | |
| | ) | Violation: 15 U.S.C. §1 (Sherman Act) |
| SOCIÉTÉ AIR FRANCE, and | ) | |
| KONINKLIJKE LUCHTVAART | ) | |
| MAATSCHAPPIJ N.V., | ) | |
| | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## PLEA AGREEMENT

The United States of America and Société Air France (hereafter "Air France") and

Koninklijke Luchtvaart Maatschappij N.V. (hereafter "KLM Royal Dutch Airlines") (collectively

"defendants"), corporations organized and existing under the laws of France and The

Netherlands, respectively, hereby enter into the following Plea Agreement pursuant to Rule

11(c)(1)(C) of the Federal Rules of Criminal Procedure ("Fed. R. Crim. P."):

## RIGHTS OF DEFENDANT

1.      The defendants understand their rights:

(a)      to be represented by an attorney;

(b)      to be charged by Indictment;

(c)      as corporations organized and existing under the laws of France and The

Netherlands, to decline to accept service of the Summons in this case, and to contest venue and the jurisdiction of the United States to prosecute this case against them in the United States District Court for the District of Columbia;

      (d)     to plead not guilty to any criminal charge brought against them;

      (e)     to have a trial by jury, at which they would be presumed not guilty of the charge and the United States would have to prove every essential element of the charged offense beyond a reasonable doubt for them to be found guilty;

      (f)     to confront and cross-examine witnesses against them and to subpoena witnesses in their defense at trial;

      (g)     to appeal their convictions if they are found guilty; and

      (h)     to appeal the imposition of the sentence against them.

## AGREEMENT TO PLEAD GUILTY
## AND WAIVE CERTAIN RIGHTS

2.     The defendants knowingly and voluntarily waive the rights set out in Paragraph 1(b)-(g) above, including all jurisdictional defenses to the prosecution of this case, and agree voluntarily to consent to the jurisdiction of the United States to prosecute this case against them in the United States District Court for the District of Columbia.  The defendants also knowingly and voluntarily waive the right to file any appeal, any collateral attack, or any other writ or motion, including but not limited to an appeal under 18 U.S.C. § 3742, that challenges the sentence imposed by the Court if that sentence is consistent with or below the recommended sentence in Paragraph 8 of this Plea Agreement, regardless of how the sentence is determined by the Court.  This agreement does not affect the rights or obligations of the United States as set

forth in 18 U.S.C. § 3742(b) and (c). Pursuant to Fed. R. Crim. P. 7(b), the defendants will each

waive indictment and plead guilty at arraignment to a one-count Information to be filed in the

United States District Court for the District of Columbia. The Information will charge the

defendants with participating in a combination and conspiracy to suppress and eliminate

competition by fixing the cargo rates charged to customers for international air shipments,

including to and from the United States, beginning on or about May 15, 2001, and continuing

until February 2006, the exact dates being unknown to the United States, in violation of the

Sherman Antitrust Act, 15 U.S.C. § 1.

3.      The defendants, pursuant to the terms of this Plea Agreement, will plead guilty to

the criminal charge described in Paragraph 2 above and will make a factual admission of guilt to

the Court in accordance with Fed. R. Crim. P. 11, as set forth in Paragraph 4 below.

## FACTUAL BASIS FOR OFFENSE CHARGED

4.      Had this case gone to trial, the United States would have presented

evidence sufficient to prove the following facts against the defendants:

(a)      For purposes of this Plea Agreement, the "relevant period" is that period

from on or about May 15, 2001, until February 2006. At the start of the relevant period until

May 2004, the defendants were operating as two separate, independent companies; Air France

was and is a corporation organized and existing under the laws of France, and KLM Royal Dutch

Airlines was and is a corporation organized and existing under the laws of The Netherlands.

Beginning in May 2004 and continuing through the remainder of the relevant period, the

companies were under common ownership by a single holding company and began to integrate

cargo operations outside of the United States. During the relevant period, the defendants

3

provided international air transportation services for cargo ("air cargo services") on trans-Atlantic routes to and from the United States and together employed more than 5000 individuals. For the purposes of this Plea Agreement, "air cargo services" shall mean the shipment by air transportation for any portion of transit of any good, property, mail, product, container or item, such as heavy equipment, perishable commodities, and consumer goods. For their air cargo services, the defendants charged customers a price that consisted of a base rate and, at times during the relevant period, various surcharges and fees, such as a fuel surcharge and a security surcharge. The amount of the base rate charged by the defendants could vary based on the type and weight of the shipment, the origin and/or destination of the shipment, and the nature of the goods or products being shipped. The base rate, surcharges, and fees charged by the defendants to customers for air cargo services are collectively referred to herein as the "cargo rate." During the relevant period, the defendant Air France's sales of air cargo services from the United States totaled approximately $481 million and the defendant KLM Royal Dutch Airlines's sales of air cargo services from the United States totaled approximately $337.6 million. The total affected volume of commerce for both defendants combined is approximately $818.6 million.

(b)     During the relevant period, the defendants, through their officers and employees, including high-level personnel of the defendants' cargo divisions, participated in a conspiracy with one or more providers of air cargo services, a primary purpose of which was to suppress and eliminate competition by fixing one or more components of the cargo rates charged to customers for U.S./trans-Atlantic air shipments. In furtherance of the conspiracy, the defendants, through their officers and employees, engaged in discussions and attended meetings with representatives of one or more providers of air cargo services. During these discussions and meetings,

4

agreements were reached to fix one or more components of the cargo rates to be charged to purchasers of certain air cargo services.

(c)    During the relevant period, certain air cargo shipments provided by one or more of the conspirator carriers, and aircraft necessary to transport the air cargo shipments, as well as payments for the air cargo shipments, traveled in interstate and foreign commerce. The business activities of the defendants and their co-conspirators in connection with the sale and provision of trans-Atlantic air cargo services affected by this conspiracy were within the flow of, and substantially affected, interstate and foreign trade and commerce.

## POSSIBLE MAXIMUM SENTENCE

5.    The defendants understand that the statutory maximum penalty which may be imposed against each of them upon conviction for a violation of Section One of the Sherman Antitrust Act is a fine in an amount equal to the greatest of:

(a)    $100 million (15 U.S.C. § 1);

(b)    twice the gross pecuniary gain the conspirators derived from the crime (18 U.S.C. § 3571(c) and (d)); or

(c)    twice the gross pecuniary loss caused to the victims of the crime by the conspirators (18 U.S.C. § 3571(c) and (d)).

6.    In addition, the defendants understand that:

(a)    pursuant to 18 U.S.C. § 3561(c)(1), the Court may impose a term of probation of at least one year, but not more than five years against each defendant;

(b)    pursuant to §8B1.1 of the United States Sentencing Guidelines

5

("U.S.S.G.," "Sentencing Guidelines," or "Guidelines") or 18 U.S.C. § 3563(b)(2) or 3663(a)(3), the Court may order each defendant to pay restitution to the victims of the offense; and

        (c)    pursuant to 18 U.S.C. § 3013(a)(2)(B), the Court is required to order the defendants to each pay a $400 special assessment upon conviction for the charged crime.

## SENTENCING GUIDELINES

7.    The defendants understand that the Sentencing Guidelines are advisory, not mandatory, but that the Court must consider the Guidelines in effect on the day of sentencing, along with the other factors set forth in 18 U.S.C. § 3553(a), in determining and imposing sentence. The defendants understand that the Guidelines determinations will be made by the Court by a preponderance of the evidence standard. The defendants understand that although the Court is not ultimately bound to impose a sentence within the applicable Guidelines range, the sentence imposed must be reasonable based upon consideration of all relevant sentencing factors set forth in 18 U.S.C. § 3553(a). Pursuant to U.S.S.G. §1B1.8, the United States agrees that self-incriminating information that the defendants and their cooperating officers and employees have provided and will provide to the United States pursuant to this Plea Agreement will not be used to increase the volume of affected commerce attributable to the defendants or in determining the defendants' applicable Guidelines range, except to the extent provided in U.S.S.G. §1B1.8(b).

## SENTENCING AGREEMENT

8.    Pursuant to Fed. R. Crim. P. 11(c)(1)(C), the United States and the defendants

agree that the appropriate disposition of this case is, and agree to recommend jointly that the Court impose, a sentence requiring payment to the United States of a single criminal fine of $350 million, pursuant to 18 U.S.C. §3571(d), payable in full before the fifteenth (15th) day after the date of judgment ("the recommended sentence").  Based on the revenue figures listed in Paragraph 4(a), the United States and the defendants agree that defendant Air France's attributable portion of the total fine is $210 million and defendant KLM Royal Dutch Airlines's attributable portion of the total fine is $140 million.  The parties agree that there exists no aggravating or mitigating circumstance of any kind, or to a degree, not adequately taken into consideration by the U.S. Sentencing Commission in formulating the Sentencing Guidelines justifying a departure pursuant to U.S.S.G. §5K2.0.  The parties agree not to seek or support any sentence outside of the Guidelines range nor any Guidelines adjustment for any reason that is not set forth in this Plea Agreement.  The parties further agree that the recommended sentence set forth in this Plea Agreement is reasonable.

**Guidelines Analysis**

(a)    Pursuant to U.S.S.G. §8C2.5, the defendants' culpability score is 8.  This number is calculated by starting with 5 points, pursuant to U.S.S.G. §8C2.5(a); adding 5 points because the unit of organization within which the offense was committed has more than 5000 employees and an individual within high-level personnel of the unit participated in, condoned or was willfully ignorant of the offense, pursuant to U.S.S.G. §8C2.5(b)(1)(B); and subtracting 2 points because the defendants fully cooperated in the investigation and clearly demonstrated recognition and affirmative acceptance of responsibility for their criminal conduct, pursuant to

U.S.S.G. §8C2.5(g)(2). Accordingly, the minimum multiplier to be applied to the base fine is 1.6 and the maximum multiplier is 3.2, pursuant to U.S.S.G. §8C2.6.

(b)    The base fine is 20% of the volume of commerce, pursuant to U.S.S.G. §2R1.1(d)(1) and §8C2.4(a) and (b). The parties agree that the affected volume of commerce attributable to the defendants for purposes of the Information is $818.6 million, adjusted to reflect information provided to the United States pursuant to U.S.S.G. §1B1.8. The base fine for relevant air cargo shipments is $163.7 million (20% of $818.6 million). Applying the multipliers of 1.6 and 3.2 to this amount, the fine range for the relevant air cargo shipments from the United States is between $261.9 million and $523.8 million.

(c)    The volume of affected commerce calculation in paragraph 8(b) above does not include commerce related to the defendants' cargo shipments on trans-Atlantic routes into the United States. The defendants take the position that any agreements reached with competitors with respect to cargo shipments on routes into the United States should not be included in the defendants' volume of affected commerce calculation pursuant to U.S.S.G. §2R1.1(d)(1). The United States disputes the defendants' position and contends that the defendants' cargo shipments on routes into the United States during the charged conspiracy period violated the U.S. antitrust laws. Moreover, the United States asserts that a Guidelines fine calculation that fails to account for cargo shipments into the United States affected by the conspiracy charged in the Information would understate the seriousness of, and the harm caused to U.S. victims by, the offense and would not provide just punishment.

(d)    The parties recognize the complexity of litigating the issues set forth in

8

Paragraph 8(c) and the resulting burden on judicial and party resources, and agree that the appropriate resolution of this issue is to impose a fine in the lower end of the Guidelines sentencing range consistent with the early cooperation and substantial assistance provided by both defendants in this matter. The parties agree that the appropriate fine for the commerce affected by defendants' participation in the charged conspiracy is $350 million payable as set forth in paragraph 8 above, with $210 million attributable to defendant Air France and $140 million attributable to defendant KLM Royal Dutch Airlines.

(e)    The defendants understand that the Court will order them each to pay a $400 special assessment, pursuant to 18 U.S.C. § 3013(a)(2)(B), in addition to any fine imposed.

(f)    Based on the defendants' substantial assistance, all parties will recommend that no term of probation be imposed, but the defendants understand that the Court's denial of this request will not void this Plea Agreement.

(g)    The United States contends that had this case gone to trial, the United States would have presented evidence to prove that the gain derived from or the loss resulting from the charged offense is sufficient to justify the recommended sentence and fine apportionments set forth in this paragraph, pursuant to 18 U.S.C. § 3571(d). For the purposes of this plea and sentencing only, the defendants waive their right to contest this calculation.

(h)    The United States and the defendants jointly submit that this Plea Agreement, together with the record that will be created by the United States and the defendants at the plea and sentencing hearings, and the further disclosure described in Paragraph 9, will provide sufficient information concerning the defendants, the crime charged in this case, and the

defendants' role in the crime to enable the meaningful exercise of sentencing authority by the Court under 18 U.S.C. § 3553. The United States and the defendants agree to request jointly that the Court accept the defendants' guilty pleas and impose sentence on an expedited schedule as early as the date of arraignment, based upon the record provided by the defendants and the United States, under the provisions of Fed. R. Crim. P. 32(c)(1)(A)(ii) and U.S.S.G. § 6A1.1. The Court's denial of the request to impose the sentence on an expedited schedule will not void this Plea Agreement.

9.      Subject to the ongoing, full, and truthful cooperation of the defendants described in Paragraph 12 of this Plea Agreement, and before sentencing in the case, the United States will fully advise the Court and the Probation Office of the fact, manner, and extent of the defendants' cooperation and their commitment to prospective cooperation with the United States' investigation and prosecutions, all material facts relating to the defendants' involvement in the charged offense, and all other relevant conduct.

10.      The United States and the defendants understand that the Court retains complete discretion to accept or reject the recommended sentence provided for in Paragraph 8 of this Plea Agreement.

(a)      If the Court does not accept the recommended sentence, the United States and the defendants agree that this Plea Agreement, except for Paragraph 10(b) below, shall be rendered void.

(b)      If the Court does not accept the recommended sentence, the defendants will be free to withdraw their guilty pleas (Fed. R. Crim. P. 11(c)(5) and

10

(d)).  If the defendants withdraw their pleas of guilty, this Plea Agreement, the guilty pleas, and any statement made in the course of any proceedings under Fed. R. Crim. P. 11 regarding the guilty pleas or this Plea Agreement or made in the course of plea discussions with an attorney for the government shall not be admissible against the defendants in any criminal or civil proceeding, except as otherwise provided in Fed. R. Evid. 410.  In addition, the defendants agree that, if they withdraw their guilty pleas pursuant to this subparagraph of the Plea Agreement, the statute of limitations period for any offense referred to in Paragraph 14 of this Plea Agreement shall be tolled for the period between the date of the signing of the Plea Agreement and the date the defendants withdrew their guilty pleas or for a period of sixty (60) days after the date of the signing of the Plea Agreement, whichever period is greater.

11.     In light of pending civil class action lawsuits filed against the defendants, which potentially provide for a recovery of a multiple of actual damages, the United States agrees that it will not seek a restitution order for the offense charged in the Information.

## DEFENDANTS' COOPERATION

12.     The defendants and their subsidiaries will cooperate fully and truthfully with the United States in the prosecution of this case, the conduct of the current federal investigation of violations of federal antitrust and related criminal laws involving the sale of air cargo services, and any litigation or other proceedings arising or resulting from such investigation to which the United States is a party ("Federal Proceeding").  The ongoing, full, and truthful cooperation of the defendants and their subsidiaries shall include, but not be limited to:

(a)    producing to the United States all non-privileged documents, information, and other materials (with translations into English), wherever located, in the possession, custody, or control of the defendants or any of their subsidiaries, requested by the United States in connection with any Federal Proceeding; and

(b)    using their best efforts to secure the ongoing, full, and truthful cooperation, as defined in Paragraph 13 of this Plea Agreement, of the current and former directors, officers, and employees of the defendants or any of their subsidiaries as may be requested by the United States – but excluding Marc Boudier, Jean Charles Foucault, Bram Gräber, Jean Paul Moreau and Michael Wisbrun – including making these persons available in the United States and at other mutually agreed-upon locations, at the defendants' expense, for interviews and the provision of testimony in grand jury, trial, and other judicial proceedings in connection with any Federal Proceeding.

13.    The ongoing, full, and truthful cooperation of each person described in Paragraph 12(b) above will be subject to the procedures and protections of this paragraph, and shall include, but not be limited to:

(a)    producing in the United States and at other mutually agreed-upon locations all non-privileged documents, including claimed personal documents, and other materials, wherever located, requested by attorneys and agents of the United States in connection with any Federal Proceeding;

(b)    making himself or herself available for interviews in the United States and at other mutually agreed-upon locations, not at the expense of the United States, upon the

request of attorneys and agents of the United States;

(c)     responding fully and truthfully to all inquiries of the United States in connection with any Federal Proceeding, without falsely implicating any person or intentionally withholding any information, subject to the penalties of making false statements (18 U.S.C. § 1001) and obstruction of justice (18 U.S.C. § 1503, *et seq.*);

(d)     otherwise voluntarily providing the United States with any non-privileged material or information not requested in (a) - (c) of this paragraph that he or she may have that is related to any Federal Proceeding;

(e)     when called upon to do so by the United States in connection with any Federal Proceeding, testifying in grand jury, trial, and other judicial proceedings in the United States fully, truthfully, and under oath, subject to the penalties of perjury (18 U.S.C. § 1621), making false statements or declarations in grand jury or court proceedings (18 U.S.C. § 1623), contempt (18 U.S.C. §§ 401-402), and obstruction of justice (18 U.S.C. § 1503, *et seq.*); and

(f)     agreeing that, if the agreement not to prosecute him or her in this Plea Agreement is rendered void under Paragraph 15(c), the statute of limitations period for any Relevant Offense as defined in Paragraph 15(a) shall be tolled as to him or her for the period between the date of the signing of this Plea Agreement and six (6) months after the date that the United States gave notice of its intent to void its obligations to that person under the Plea Agreement.

## GOVERNMENT'S AGREEMENT

14.    Upon acceptance of the guilty pleas called for by this Plea Agreement and the imposition of the recommended sentence, and subject to the cooperation requirements of Paragraph 12 of this Plea Agreement, the United States agrees that it will not bring further criminal charges against the defendants or any of their subsidiaries for any act or offense committed before the date of this Plea Agreement that was undertaken in furtherance of an antitrust conspiracy involving the sale of air cargo services. The nonprosecution terms of this paragraph do not apply to civil matters of any kind, to any violation of the federal tax or securities laws, or to any crime of violence. KLM Royal Dutch Airlines has an ownership interest in Martinair Holland N.V. This Plea Agreement does not limit the ability of the United States to prosecute Martinair Holland N.V. for any involvement in any offense.

15.    The United States agrees to the following:

(a)    Upon the Court's acceptance of the guilty plea called for by this Plea Agreement and the imposition of the recommended sentence and subject to the exceptions noted in Paragraph 15(c), the United States will not bring criminal charges against any current or former director, officer, or employee of the defendants or their subsidiaries for any act or offense committed before the date of this Plea Agreement and while that person was acting as a director, officer, or employee of the defendants or their subsidiaries that was undertaken in furtherance of an antitrust conspiracy involving the sale of air cargo services ("Relevant Offense"), except that the protections granted in this paragraph shall not apply to Marc Boudier, Jean Charles Foucault, Bram Gräber, Jean

14

Paul Moreau and Michael Wisbrun;

    (b)    Should the United States determine that any current or former director, officer, or employee of the defendants or their subsidiaries may have information relevant to any Federal Proceeding, the United States may request that person's cooperation under the terms of this Plea Agreement by written request delivered to counsel for the individual (with a copy to the undersigned counsel for the defendants) or, if the individual is not known by the United States to be represented, to the undersigned counsel for the defendants;

    (c)    If any person requested to provide cooperation under Paragraph 15(b) fails to comply with his or her obligations under Paragraph 13, then the terms of this Plea Agreement as they pertain to that person, and the agreement not to prosecute that person granted in this Plea Agreement, shall be rendered void;

    (d)    Except as provided in Paragraph 15(e), information provided by a person described in Paragraph 15(b) to the United States under the terms of this Plea Agreement pertaining to any Relevant Offense, or any information directly or indirectly derived from that information, may not be used against that person in a criminal case, except in a prosecution for perjury (18 U.S.C. § 1621), making a false statement or declaration (18 U.S.C. §§ 1001, 1623), or obstruction of justice (18 U.S.C. § 1503, *et seq.*);

    (e)    If any person who provides information to the United States under this Plea Agreement fails to comply fully with his or her obligations under Paragraph 13 of this Plea Agreement, the agreement in Paragraph 15(d) not to use that information or any

information directly or indirectly derived from it against that person in a criminal case shall be rendered void;

      (f)     The nonprosecution terms of this paragraph do not apply to civil matters of any kind, to any violation of the federal tax or securities laws, or to any crime of violence; and

      (g)     Documents provided under Paragraphs 12(a) and 13(a) shall be deemed responsive to outstanding grand jury subpoenas issued to the defendants or any of their subsidiaries.

16.     The United States agrees that when any person travels to the United States for interviews, grand jury appearances, or court appearances pursuant to this Plea Agreement, or for meetings with counsel in preparation therefor, the United States will take no action, based upon any Relevant Offense, to subject such person to arrest, detention, or service of process, or to prevent such person from departing the United States. This paragraph does not apply to an individual's commission of perjury (18 U.S.C. § 1621), making false statements (18 U.S.C. § 1001), making false statements or declarations in grand jury or court proceedings (18 U.S.C. § 1623), obstruction of justice (18 U.S.C. § 1503, *et seq.*), or contempt (18 U.S.C. §§ 401-402) in connection with any testimony or information provided or requested in any Federal Proceeding.

17.     The defendants understand that they may be subject to administrative action by federal or state agencies other than the United States Department of Justice, Antitrust Division, based upon the convictions resulting from this Plea Agreement, and that this Plea Agreement in no way controls whatever action, if any, other agencies may take. However, the United States

16

agrees that, if requested, it will advise the appropriate officials of any governmental agency considering such administrative action of the fact, manner, and extent of the cooperation of the defendants and their subsidiaries as a matter for that agency to consider before determining what administrative action, if any, to take.

## REPRESENTATION BY COUNSEL

18.     The defendants have been represented by counsel and are fully satisfied that their attorneys have provided competent legal representation.  The defendants have thoroughly reviewed this Plea Agreement and acknowledge that counsel has advised them of the nature of the charge, any possible defenses to the charge, and the nature and range of possible sentences.

## VOLUNTARY PLEA

19.     The defendants' decisions to enter into this Plea Agreement and to tender pleas of guilty are freely and voluntarily made and are not the result of force, threats, assurances, promises, or representations other than the representations contained in this Plea Agreement. The United States has made no promises or representations to the defendants as to whether the Court will accept or reject the recommendations contained within this Plea Agreement.

## VIOLATION OF PLEA AGREEMENT

20.     The defendants agree that, should the United States determine in good faith, during the period that any Federal Proceeding is pending, that the defendants or any of their subsidiaries have failed to provide full and truthful cooperation, as described in Paragraph 12 of this Plea Agreement, or have otherwise violated any provision of this Plea Agreement, the United States will notify counsel for the defendants in writing by personal or overnight delivery or

17

facsimile transmission and may also notify counsel by telephone of its intention to void any of its obligations under this Plea Agreement (except its obligations under this paragraph), and the defendants and their subsidiaries shall be subject to prosecution for any federal crime of which the United States has knowledge including, but not limited to, the substantive offenses relating to the investigation resulting in this Plea Agreement. The defendants and their subsidiaries agree that, in the event that the United States is released from its obligations under this Plea Agreement and brings criminal charges against the defendants or their subsidiaries for any offense referred to in Paragraph 14 of this Plea Agreement, the statute of limitations period for such offense shall be tolled for the period between the date of the signing of this Plea Agreement and six (6) months after the date the United States gave notice of its intent to void its obligations under this Plea Agreement.

21.    The defendants understand and agree that in any further prosecution of them or their subsidiaries resulting from the release of the United States from its obligations under this Plea Agreement, because of the defendants' or their subsidiaries' violation of the Plea Agreement, any documents, statements, information, testimony, or evidence provided by them, their subsidiaries, or current or former directors, officers, or employees of the defendants or their subsidiaries to attorneys or agents of the United States, federal grand juries, or courts, and any leads derived therefrom, may be used against them or their subsidiaries in any such further prosecution. In addition, the defendants unconditionally waive their right to challenge the use of such evidence in any such further prosecution, notwithstanding the protections of Fed. R. Evid. 410.

18

## ENTIRETY OF AGREEMENT

22.    This Plea Agreement constitutes the entire agreement between the United States and the defendants concerning the disposition of the criminal charge in this case. This Plea Agreement cannot be modified except in writing, signed by the United States and the defendants.

23.    The undersigned are authorized to enter this Plea Agreement on behalf of the defendants as evidenced by the Resolutions of the Boards of Directors of the defendants attached to, and incorporated by reference in, this Plea Agreement.

24.    The undersigned attorneys for the United States have been authorized by the Attorney General of the United States to enter this Plea Agreement on behalf of the United States.

25.    A facsimile signature shall be deemed an original signature for the purpose of executing this Plea Agreement.  Multiple signature pages are authorized for the purpose of executing this Plea Agreement.

DATED:_____

                                        Respectfully submitted,

19

BY:_____

SOCIÉTÉ AIR FRANCE
    By: Philippe Calavia
    Its: Chief Financial Officer


BY:_____

KONINKLIJKE LUCHTVAART
MAATSCHAPPIJ N.V.
    By: Peter F. Hartman
    Its: President and Chief Executive Officer

BY:_____

Mark Rosman, Assistant Chief
Brent Snyder, Trial Attorney
Mark C. Grundvig, Trial Attorney
Kathryn M. Hellings, Trial Attorney
Elizabeth Aloi, Trial Attorney
U.S. Department of Justice
Antitrust Division
450 5th Street NW
Suite 11300
Washington, D.C. 20530
Tel.: (202) 307-6694
Fax: (202) 514-6525




BY: _____

Thomas A. McGrath
Linklaters LLP
1345 Avenue of the Americas
New York, New York  10105
(212) 903-9140

Counsel for SOCIÉTÉ AIR FRANCE



BY: _____

John M. Nannes
Skadden, Arps, Slate, Meagher & Flom LLP
1440 New York Avenue, N.W.
Washington, D.C. 20005
(202) 371-7000

Counsel for KONINKLIJKE LUCHTVAART MAATSCHAPPIJ N.V.

BY:_____

SOCIÉTÉ AIR FRANCE
    By: Philippe Calavia
    Its: Chief Financial Officer


BY:_____

KONINKLIJKE LUCHTVAART
MAATSCHAPPIJ N.V.
    By: Peter F. Hartman
    Its: President and Chief Executive Officer

BY:_____

Mark Rosman, Assistant Chief
Brent Snyder, Trial Attorney
Mark C. Grundvig, Trial Attorney
Kathryn M. Hellings, Trial Attorney
Elizabeth Aloi, Trial Attorney
U.S. Department of Justice
Antitrust Division
450 5th Street NW
Suite 11300
Washington, D.C. 20530
Tel.: (202) 307-6694
Fax: (202) 514-6525


BY: _____

Thomas A. McGrath
Linklaters LLP
1345 Avenue of the Americas
New York, New York  10105
(212) 903-9140

Counsel for SOCIÉTÉ AIR FRANCE


BY: _____

John M. Nannes
Skadden, Arps, Slate, Meagher & Flom LLP
1440 New York Avenue, N.W.
Washington, D.C. 20005
(202) 371-7000

Counsel for KONINKLIJKE LUCHTVAART MAATSCHAPPIJ N.V.

BY:_____
SOCIÉTÉ AIR FRANCE
   By: Philippe Calavia
   Its: Chief Financial Officer


BY:_____
KONINKLIJKE LUCHTVAART
MAATSCHAPPIJ N.V.
   By: Peter F. Hartman
   Its: President and Chief Executive Officer

BY:_____
Mark Rosman, Assistant Chief
Brent Snyder, Trial Attorney
Mark C. Grundvig, Trial Attorney
Kathryn M. Hellings, Trial Attorney
Elizabeth Aloi, Trial Attorney
U.S. Department of Justice
Antitrust Division
450 5th Street NW
Suite 11300
Washington, D.C. 20530
Tel.: (202) 307-6694
Fax: (202) 514-6525


BY: _____
Thomas A. McGrath
Linklaters LLP
1345 Avenue of the Americas
New York, New York  10105
(212) 903-9140

Counsel for SOCIÉTÉ AIR FRANCE


BY: _____
John M. Nannes
Skadden, Arps, Slate, Meagher & Flom LLP
1440 New York Avenue, N.W.
Washington, D.C. 20005
(202) 371-7000

Counsel for KONINKLIJKE LUCHTVAART MAATSCHAPPIJ N.V.

BY:_____

SOCIÉTÉ AIR FRANCE
    By: Philippe Calavia
    Its: Chief Financial Officer


BY:_____

KONINKLIJKE LUCHTVAART
MAATSCHAPPIJ N.V.
    By: Peter F. Hartman
    Its: President and Chief Executive Officer


BY:_____
Thomas A. McGrath
Linklaters LLP
1345 Avenue of the Americas
New York, New York  10105
(212) 903-9140

Counsel for SOCIÉTÉ AIR FRANCE


BY:_____
John M. Nannes
Skadden, Arps, Slate, Meagher & Flom LLP
1440 New York Avenue, N.W.
Washington, D.C. 20005
(202) 371-7000

Counsel for KONINKLIJKE LUCHTVAART MAATSCHAPPIJ N.V.

BY:_____
    Mark Rosman, Assistant Chief
    Brent Snyder, Trial Attorney
    Mark C. Grundvig, Trial Attorney
    Kathryn M. Hellings, Trial Attorney
    Elizabeth Aloi, Trial Attorney
    U.S. Department of Justice
    Antitrust Division
    450 5th Street NW
    Suite 11300
    Washington, D.C. 20530
    Tel.: (202) 307-6694
    Fax: (202) 514-6525

20

BY:_____
SOCIÉTÉ AIR FRANCE
    By: Philippe Calavia
    Its: Chief Financial Officer


BY:_____
KONINKLIJKE LUCHTVAART
MAATSCHAPPIJ N.V.
    By: Peter F. Hartman
    Its: President and Chief Executive Officer

BY:_____
Mark Rosman, Assistant Chief
Brent Snyder, Trial Attorney
Mark C. Grundvig, Trial Attorney
Kathryn M. Hellings, Trial Attorney
Elizabeth Aloi, Trial Attorney
U.S. Department of Justice
Antitrust Division
450 5th Street NW
Suite 11300
Washington, D.C. 20530
Tel.: (202) 307-6694
Fax: (202) 514-6525


BY: _____
Thomas A. McGrath
Linklaters LLP
1345 Avenue of the Americas
New York, New York 10105
(212) 903-9140

Counsel for SOCIÉTÉ AIR FRANCE

BY: _____
John M. Nannes
Skadden, Arps, Slate, Meagher & Flom LLP
1440 New York Avenue, N.W.
Washington, D.C. 20005
(202) 371-7000

Counsel for KONINKLIJKE LUCHTVAART MAATSCHAPPIJ N.V.